In re G. WEEKS SECURITIES, INC., Debtor.

Francis J. SCOTT and T. Harold Craig, Co-Trustees for G. Weeks Securities, Inc., Plaintiffs,

v.

FORT ORD FEDERAL CREDIT UNION, Defendant.

Bankruptcy No. BK–79–22564.
Adversary No. 80–0079.

United States Bankruptcy Court, W. D. Tennessee, W. D.

July 10, 1980.

J. Richard Rossie, Memphis, Tenn., for plaintiffs.

Thomas R. Todd, Jr., Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

WILLIAM B. LEFFLER, Bankruptcy Judge.

### I

This cause came on to be heard upon the defendant's motions to dismiss for lack of

personal jurisdiction, to dismiss for improper venue, and to quash service of process. The defendant, Fort Ord Federal Credit Union, is a federally chartered credit union whose principal place of business is in Fort Ord, California. The plaintiffs are co-trustees for G. Weeks Securities, Inc., a debtor under Chapter 11 of the Bankruptcy Code.

In early May of 1978, an employee of the debtor allegedly began telephoning the defendant to solicit the execution of forward contracts in GNMA (Government National Mortgage Association) certificates. As a result of this solicitation, the debtor allegedly mailed certain documents regarding said certificates to the defendant in Fort Ord, California, and the defendant signed and returned them by mail to the debtor in Memphis, Tennessee. The defendant contends that it conducted no business in the State of Tennessee and that its only contacts with this state occurred via telephone conversations and the mailing of certain documents back to the debtor.

On March 3, 1980, the plaintiffs filed a complaint against the defendant in this Court. Said complaint alleged, *inter alia*, that the defendant entered into two contracts with the debtor for the purchase of GNMA certificates. These contracts were dated May 4, 1979 and May 11, 1978, with "settlement dates" on February 20, 1980, and April 19, 1980, respectively. The plaintiffs further alleged that in late December, 1979, or early January, 1980, the defendant repudiated and breached its contractual obligations, said repudiation and breach of contract being confirmed by defendant's letter of February 5, 1980.

On March 5, 1980, the plaintiffs, pursuant to Bankruptcy Rule 704, caused a "Summons and Notice of Trial" to issue from this Court together with a copy of the aforesaid complaint. Service of process was made on the defendant by first class United States mail carrying pre-paid postage. An authorized agent of the defendant actually received the complaint together with the Summons and Notice of Trial. On or about April 7, 1980, the defendant filed the three motions now before the Court.

## II

The defendant contends:

(1) that this Court's exercise of *in personam* jurisdiction over the defendant constitutes a violation of substantive due process under the Fifth Amendment to the U. S. Constitution, in that said defendant has no "minimum contacts" with the State of Tennessee;

(2) that service of process pursuant to Bankruptcy Rule 704 constitutes a violation of procedural due process under the Fifth Amendment; and,

(3) that under 28 U.S.C. § 1473(d) venue does not lie in this district.

## III

Should the Court grant the defendant's motions to dismiss and to quash service of process?

## IV

At the outset it is important to note that, as a fundamental rule of statutory construction, Congressional legislation is presumed to be constitutional. 16 Am. Jur.2d Constitutional Law § 212, page 631 (and cases cited therein). Determining the constitutionality of such a statute is a matter calling for careful and deliberate consideration. The Court should exercise its power in this respect with the "greatest possible caution and even reluctance . . . ruling against constitutionality of a statute only as a last resort, when absolutely necessary, and where its invalidity is beyond a reasonable doubt." 16 Am.Jur.2d Constitutional Law § 158, page 538 (and cases cited therein). The presumption of constitutionality is a strong one, but it is not conclusive. Rather, it is a rebuttable presumption of fact. 16 Am.Jur.2d Constitutional Law § 214, page 636 (and cases cited therein). As a consequence of the presumption in favor of the validity of Congressional legislation and the duty to resolve all doubts in favor of their validity, the party alleging unconstitutionality has the burden of proof and must show a clear conflict between the

statute in question and some provision of the Constitution. 16 Am.Jur.2d Constitutional Law § 251, pages 708–711 (and cases cited therein). Furthermore, the conclusion that repugnancy to the Constitution exists must be "inevitable." 16 Am.Jur.2d Constitutional Law § 253, pages 713–716 (and cases cited therein).

## V

In 1970, Congress created the Commission on the Bankruptcy Laws of the United States for the purpose of studying and recommending changes in the bankruptcy laws. The Commission found several "objectionable results to the division of jurisdiction of the judicial business generated by the bankruptcy cases." See, 1 *Collier on Bankruptcy*, Par. 1.03, at page 1–18 (15th ed., 1979). In its final report filed with Congress on July 30, 1973, the Commission listed several of these "objectionable results" that existed under the prior Bankruptcy Act. These included: (1) delay caused by litigating in nonbankruptcy forums, (2) extra expense to the bankrupt estate incurred by outside litigation, and (3) frequent, time-consuming and expensive litigation, regarding the question of summary versus plenary jurisdiction.

In order to overcome the problems of jurisdictional division that existed under the prior Bankruptcy Act, 28 U.S.C. § 1471 was enacted. That section reads as follows:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

"(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

"(c) *The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.*

"(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

"(e) *The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.*" (Emphasis added).

The Senate Report on 28 U.S.C. § 1471 contains the following relevant language:

"This section amends 28 U.S.C. § 1334 relating to the jurisdiction of the U. S. district courts over bankruptcy proceedings. In deference to concern over the splintering of the jurisdiction of the district courts, original and exclusive jurisdiction of all bankruptcy cases shall remain in the district court, and the jurisdiction of the district courts over bankruptcy matters is expanded to include all controversies arising out of or related to a case under title 11. *However, a statutory scheme has been adopted whereby the totality of this jurisdiction, subject only to the exceptions set forth in subsection (d) of this section, shall be exercised by the bankruptcy court, which is created as an adjunct of each U. S. district court.*

. . . . .

"Subsection (b) grants to the U. S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This broad grant of jurisdiction will enable the bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction, to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in the state court or in the federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court.

*The idea of possession and consent as basis for jurisdiction is eliminated. The adjunct bankruptcy courts will exercise in personal jurisdiction as well as in rem jurisdiction in order that they may handle everything that arises in a bankruptcy case.*" (Emphasis added.)

1 *Collier on Bankruptcy*, Par. 3.01, at pages 3–33, 3–34 (15th ed., 1979); S.Rep.No. 989, 95th Cong., 1st Sess. 153–54 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5939.

Although some difference existed between the House and Senate versions of § 1471, both reports are in accord regarding the expanded jurisdiction of bankruptcy courts under § 1471. The relevant portions of the House Report are as follows:

"Subsection (b) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. *Actions that formerly had to be tried in State court or in Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts. The idea of possession or consent as the sole basis for jurisdiction is eliminated. The bankruptcy court is given in personam jurisdiction (sic) as well as in rem jurisdiction to handle everything that arises in a bankruptcy case.*" (Emphasis added).

1 *Collier on Bankruptcy*, Par. 3.01, at pages 3–34, 3–35 (15th ed., 1979); H.R. Rep.No. 595, 95th Cong., 1st Sess. 445–46 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6400.

■ Based upon the above cited authorities, it is clear that 28 U.S.C. § 1471 was intended as a "comprehensive grant" of *in rem* and *in personam* jurisdiction "to the bankruptcy courts over all controversies arising out of any bankruptcy or rehabilitation case." 1 *Collier on Bankruptcy*, Par. 1.03 at page 1–21 (15th ed., 1979). How-

ever, the defendant contends, *inter alia*, that in order to meet the requirements of the Fifth Amendment, the existence of *in personam* jurisdiction must be determined in accordance with the provisions of the Tennessee "Long Arm Statute" (T.C.A. § 20–235).

■ It is well settled in this circuit that federal courts *in diversity cases* must look to the law of the appropriate state to determine the extent of their personal jurisdiction. *Davis H. Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176 (6th Cir., 1975); *In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 446 F.2d 220 (6th Cir., 1972); *Velandra v. Regie Nationale Des Usines Renault*, 336 F.2d 292 (6th Cir., 1964); *Smartt v. Coca-Cola Bottling Corp.*, 318 F.2d 447 (6th Cir., 1963). However, this rule is not based on the requirements of the Fifth Amendment but is founded on the doctrine of *Erie v. Tompkins* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937). *Velandra v. Regie Nationale Des Usines Renault*, supra; *Smartt v. Coca-Cola Bottling Corp.*, supra. The landmark Supreme Court decision in *Erie v. Tompkins* overruled the longstanding rule of *Swift v. Tyson*, 16 Pet. 1, 10 L.Ed. 865 (1842). *Swift v. Tyson* enunciated the rule that "federal courts exercising jurisdiction on the ground of diversity of citizenship . . . need not apply the unwritten law of the state as declared by its highest court", but were "free to exercise an independent judgment as to what the common law of the state is—or should be . . ." *Erie v. Tompkins*, at page 71, 58 S.Ct. at page 819. The Supreme Court in *Erie* declared that the rule of *Swift v. Tyson* was "an unconstitutional assumption of powers by the courts of the United States . . ." *Erie v. Tompkins*, at pages 79–80, 58 S.Ct. at page 823, Thus, the Supreme Court held:

"*Except in matters governed by the Federal Constitution or by Acts of Congress*, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its legislature in a statute or by its highest court in a decision is not a matter of

federal concern. There is no federal common law. Congress has no power to declare substantive rules of common law applicable in a state . . . And no clause in the Constitution purports to confer such a power upon the federal courts." *Erie v. Tompkins*, at page 78, 58 S.Ct. at page 822. (Emphasis added).

 In the instant case there does exist an "Act of Congress" that has greatly enlarged the jurisdiction of the Bankruptcy Courts. Therefore, under the *Erie* doctrine this Court is not required to look to the Tennessee "Long Arm Statute" for the purpose of determining the existence of personal jurisdiction over the defendant. The issue of constitutionality thus narrows down to the following query: May Congress, consistent with the mandates of Fifth Amendment substantive due process, grant the bankruptcy courts pervasive *in personam* jurisdiction over all controversies arising out of or relating to a bankruptcy or rehabilitation case, whether or not prospective defendants have "minimum contacts" with the state in which the bankruptcy court, having jurisdiction over the debtor, sits? For the following reasons, the Court is of the opinion that Congress possesses and may exercise such power without violating concepts of substantive due process embodied in the Fifth Amendment.

The power to enact uniform laws on the subject of bankruptcies is expressly conferred upon Congress by the Constitution of the United States. See U.S.Const. Art. 1, § 8, cl. 4. "To this express grant must be added the powers conferred under the general grant 'to make all laws which shall be necessary and proper for carrying into execution the foregoing powers . . .'" U.S.Const. Art. 1, § 8, cl. 18; 9 Am.Jur.2d Bankruptcy § 4, page 48. "Congress has power to prescribe and define the jurisdiction of inferior courts of the United States; and it may, in its discretion, give, grant, withhold, control, and regulate the jurisdiction of such courts, and, in its discretion, may enlarge . . . the jurisdiction of such courts . . . provided it does not extend jurisdiction beyond constitutional

limits . . . ". 36 C.J.S. Federal Courts § 4(1), pages 29–31 (and cases cited therein). Indeed, there is authority for the proposition that since the federal courts are the courts of the national government, power can be given to them by Congress to exercise jurisdiction over persons wherever found in the United States. See, 1 Moore's Federal Practice and Procedure Manual, Ch. 6, §§ 6.01–6.02, pages 311–312 (1978); *Fraley v. Chesapeake and Ohio Railway Company*, 294 F.Supp. 1193, 1203 (W.D.Penn., 1969). Congress in the exercise of these substantive powers is, however, subject to the Fifth Amendment to the Constitution.

Fifth Amendment substantive due process, "may be roughly defined as the constitutional guaranty that no person shall be deprived of his life, liberty, or property for arbitrary reasons, such a deprivation being constitutionally supportable only if the conduct from which the deprivation flows is proscribed by reasonable legislation (that is, legislation the enactment of which is within the scope of legislative authority) reasonably applied (that is, for a purpose consonant with the purpose of the legislation itself)." 16A Am.Jur.2d Const. Law) § 816, pages 978–979 (and cases cited therein). For purposes of substantive due process, "governmental action does not have to be the only alternative or even the best alternative for it to be reasonable and constitutional." "The fact that a statute may, in certain instances, be inequitable, harsh or oppressive does not violate the due process clause of the Constitution, provided it operates without any discrimination and in like manner against all persons of a class." 16A Am.Jur.2d Constitutional Law § 816, page 984 (and cases cited therein.)

 Based upon the above cited authorities, the mere fact that 28 U.S.C. § 1471 causes some inconvenience and hardship to the defendant in the instant case is not sufficient grounds to hold said statute to be violative of the Fifth Amendment. 28 U.S.C. § 1471 is clearly not discriminatory in its operation. In order to find that 28 U.S.C. § 1471 operates contrary to substantive due process requirements, the statute

must be arbitrary and unreasonable. However, as noted previously, Congress clearly has authority to enact such a jurisdictional statute and it is being applied for a proper purpose (that is, to overcome problems of jurisdictional division that existed under the former Bankruptcy Act). Therefore, the Court holds that 28 U.S.C. § 1471, as applied to the facts of the instant case, is not violative of Fifth Amendment substantive due process. The defendant's motion to dismiss for lack of *in personam* jurisdiction is denied.

## VI

 The defendant also contends that service of process pursuant to Bankruptcy Rule 704 constitutes a violation of procedural due process under the Fifth Amendment. In the instant case an authorized agent of the defendant was properly served with process pursuant to Rule 704(c)(3) which authorizes service of process by mail. Procedural due process mandates that a litigant receive notice and have an opportunity to be heard. 16A Am.Jur.2d Constitutional Law § 827, page 1013 (and cases cited therein). The notice must be "reasonable and adequate for the purpose, due regard being had to the nature of the proceedings and the character of the rights which may be affected by it." 16A Am.Jur.2d Constitutional Law § 829, pages 1017–1018 (and cases cited therein). However, procedural due process does not guarantee or prescribe any particular form of notice. Actual personal notice is not always necessary; constructive or substituted service (e. g. notice by mail) is constitutionally permissible in certain circumstances. 16A Am.Jur.2d Constitutional Law § 829, page 1019; § 831, pages 1021–1022 (and cases cited therein). In the instant case it is uncontroverted that the defendant received actual notice pursuant to Rule 704(c)(3). Undeniably the defendant has also had an opportunity to be heard. Therefore, the Court holds that the requirements of Fifth Amendment procedural due process have been satisfied. The defendant's motion to quash service of process is hereby denied.

## VII

The final ground relied upon by the defendant as a basis for its motion to dismiss is that venue does not properly lie in this district. Venue of proceedings arising under or related to cases under Title 11 is governed primarily by 28 U.S.C. § 1473. The relevant provisions of that section read as follows:

"(a) Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending."

"(d) A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the bankruptcy court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought."

The defendant contends that § 1473(d) is applicable in that the plaintiff's claim is one arising out of the debtor's business and after the commencement of the Chapter 11 case. However, the plaintiffs submit that § 1473(d) only applies to action of "a trustee or debtor-in-possession which were not derivative of or based on legal relationships and assets existing at the time of the filing of the bankruptcy proceeding."

 28 U.S.C. § 1473(d) applies only to claims asserted by the trustee which arise: (1) after the commencement of a title 11 case, and (2) from the operation of the business of the debtor. The debtor, in the instant case, filed its Chapter 11 petition on November 6, 1979. As noted previously, the defendant allegedly entered into the contracts in question on May 4, 1979 and May 11, 1978. An alleged anticipatory repudiation occurred in late December, 1979, or early January, 1980 and was confirmed by attorneys for the defendant on February 5, 1980. The plaintiffs were appointed co-trustees by this Court's Order dated Febru-

ary 4, 1980. Therefore, the alleged anticipatory repudiation and breach of contract occurred after the filing of the Chapter 11 petition but before the plaintiffs were appointed co-trustees. Therefore, assuming that the plaintiff-trustees' claim is based upon the breach of the contracts, the claim arose while the debtor, not the trustees, was operating its business under Chapter 11. Under these circumstances, the Court is of the opinion that § 1473(d) is not applicable to the instant case. As noted in 1 *Collier on Bankruptcy*, Par. 3.02, page 3–174 (15th ed., 1979):

> "Section 1473(d) will pertain to such actions as one to recover an account receivable *which arose from sales by the trustee* during the course of the operation of the business of the debtor; actions to specifically enforce a contract *entered into by the trustee during the course of the operation of the debtor's business*; or tort actions arising out of, for example, an automobile accident in which the property of the estate was involved but which occurred *while the property of the estate was being operated by the trustee during the course of his operations of the debtor's business.*" (Emphasis added).

Based upon these examples the Court interprets § 1473(d) as only applying to those claims which arise after the commencement of a title 11 case and from *the trustee's* operation of the business of the debtor. A contrary interpretation would be inconsistent with Congress' broad jurisdictional grant to the bankruptcy court in which the debtor's title 11 case was originally commenced. See, 28 U.S.C. § 1471. In the instant case the claim arose out of the *debtor's* operation of its business. The trustees merely succeeded to the rights of the debtor against the defendant. Therefore, the Court holds that venue does properly lie in this district pursuant to 28 U.S.C. § 1473(a). The defendant's motion to dismiss for improper venue is denied.

## VIII

The above constitutes this Court's findings of fact and conclusions of law pursuant to Rule 752 of the Bankruptcy Rules.