In re the **HOFFMAN ADVERTISING GROUP, INC.** Debtor.

**Ira S. GREENE, as Trustee of the Hoffman Advertising Group, Inc., Debtor, Plaintiff,**

v.

**CREATIVE EQUITY CORPORATION, Jay R. Kuhne, individually, Silverking Investment Ltd., Silverking/California, Ltd., Silverking Associates, Ltd., Western Slope Development Co., Western Slope Properties, Inc., Hunter Creek Limited Partnership, First Western Mortgage Corporation and Interfirst Bank Fort Worth, N.A., Defendants.**

Bankruptcy No. 83 B 11240 PA.
Adv. No. 85–5039A.

United States Bankruptcy Court,
S.D. New York.

June 30, 1986.

Gainsburg, Gottlieb, Levitan, Greene & Cole, New York City, for trustee (Alan G. Tresser, of counsel).

Johnson & Swanson, Dallas, Tex., for defendants Interfirst Bank Fort Worth, N.A. and First Western Mortg. Corp. (Alan S. Trust, of counsel).

Garfield & Hecht, P.C., Aspen, Colo., for all defendants except Interfirst Bank Fort Worth, N.A. and First Western Mortg. Corp. (Jeremy M. Bernstein, of counsel).

## MEMORANDUM DECISION DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND ORDER ON MOTION TO TRANSFER ADVERSARY PROCEEDING.

PRUDENCE B. ABRAM, Bankruptcy Judge:

The Hoffman Advertising Group, Inc. (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code on August 22, 1983. Ira S. Greene was appointed Interim Trustee of the estate on August 26, 1983. On January 22, 1985 this adversary proceeding was commenced naming as defendant "Hunter Creek Condominiums Creative Equity Corporation" seeking a turnover pursuant to 11 U.S.C. § 542 of a debt allegedly owed to the Debtor by the defendant. On April 12, 1985 the Trustee filed an Amended Summons and Complaint, superceding that previously filed, naming the following defendants: Creative Equity Corporation, Jay R. Kuhne, individually, Silverking Investment, Ltd., Silverking/California, Ltd., Silverking Associates, Ltd., Western Slope Development Co., Western Slope Properties, Inc., Hunter Creek Limited Partnership, First Western Mortgage Corporation ("Western") and Interfirst Bank Fort Worth, N.A. ("Interfirst"). The complaint states that the defendants are "jointly and severally liable for all debts and costs incurred by, or associated with, the construction of the Hunter Creek Condominiums," and that the defendants retained the Debtor to perform "advertising and other services," for an agreed amount of $137,302.57 in connection with the Hunter Creek Condominiums. It is alleged that the Debtor did render those services, that defendants have failed to pay the debt, that the debt, for which demand had been made, has matured and is past due. The Amended Complaint alleges that the debt of $137,302.57 is property of the

estate pursuant to § 541 of the Bankruptcy Code and seeks a turnover of the proceeds of the debt pursuant to Code § 542.

The Trustee asserts the basis for this court's jurisdiction over the subject matter of this adversary proceeding by reference to 28 U.S.C. § 1334, as amended by Public Law 98-353, known as the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). This court is claimed to be the proper venue by reference to 28 U.S.C. § 1409. The Amended Complaint states, on information and belief, that each of the named defendants is either a Colorado corporation or resides in or is engaged in doing business in Colorado with the exception of Interfirst, which is claimed to be an entity doing business in Texas.

On May 13, 1985 all of the defendants, with the exception of Western, moved a) to dismiss for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 157, b) for the court to abstain from hearing the proceeding pursuant to 28 U.S.C. § 1334(c)(2), c) for change of venue pursuant to 28 U.S.C. § 1412, and d) for protective orders to avoid compliance with discovery requests until the jurisdictional issue was resolved.[1] On August 23, 1985 the same defendants, with the exception of Creative Equity Corporation and Interfirst, further moved for dismissal and sought imposition of sanctions, including attorneys' fees, against plaintiff's attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure on the basis of the statement by the Trustee's counsel at the August 12, 1985 pretrial conference that there was neither a direct connection between the Debtor and these defendants nor were these defendants parties to or involved in the performance of the contract from which plaintiff's claim arises.

On May 14, 1985, by separate counsel, defendants Interfirst and Western (the "Banks"), jointly moved to dismiss for a) lack of subject matter jurisdiction; b) lack of personal jurisdiction; c) failure to state a claim upon which relief may be granted;

and d) improper venue. On August 23, 1985 these defendants filed a supplementary motion further seeking their dismissal as defendants on the basis of the previously described statements attributed to Trustee's counsel at the pretrial conference on August 12, 1985. The defendants assert that the sole basis articulated by the Trustee at that hearing for joining these defendants was that a release purportedly prepared in connection with tentative settlement discussions provided that these defendants would be relieved from any potential liability arising out of the underlying transactions. These defendants assert that this cannot form the basis of any liability. In further support of this motion, affidavits of Daniel Parker, Assistant Vice President of Interfirst and James E. DuBose, President of Western, state that these defendants had no connection with the Debtor. In addition, these defendants have moved for the imposition of sanctions pursuant to Rule 9011 of the Bankruptcy Rules and supplemented their motion to dismiss for improper venue pursuant to 28 U.S.C. § 1409(c) by moving in the alternative that venue be transferred to Colorado.

The first question to be resolved by this court is whether and to what extent it can or should adjudicate the merits of this cause of action. In this case's pre-answer procedural posture the court is faced with motions challenging its jurisdiction to hear and render a judgment or final order in the matter before it. The question of whether this court has constitutional jurisdictional authority over this matter raises issues over which there is considerable disagreement amongst those courts which have attempted to interpret the jurisdictional scope of the 1984 Bankruptcy Amendments, enacted in response to the landmark Supreme Court decision in *Northern Pipeline Company v. Marathon Pipeline Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

When, as in this case, the court is presented with more than one motion to

---

**1.** A motion to quash the summons served upon Interfirst was withdrawn at the pretrial conference on August 12, 1986 subsequent to Interfirst's receipt of proper service of process.

dismiss under Rule 12 of the Federal Rules of Federal Procedure, the court will ordinarily consider first the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction before consideration of dismissal motions pursuant to 12(b)(2) for lack of jurisdiction over the person; 12(b)(3) for improper venue; and 12(b)(6) for failure to state a claim upon which relief can be granted, since upon granting the 12(b)(1) motion the remaining defenses and objections would become moot. See 5 *Wright & Miller*, § 548. A motion to dismiss for failure to state a claim may be decided only after finding jurisdiction over the subject matter because to rule on the validity of a claim is in itself an exercise of jurisdiction. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). However, to the extent that the present case satisfies an exception to that general rule of priority for determining Rule 12 motions, the court finds it unnecessary to determine the subject matter jurisdiction issue first. It is an established principle of federal practice that when a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction should be granted only when the allegations of the complaint are frivolous. *Id.* In *A.V.C. Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148, 152–3 (2d Cir. 1984), Judge Friendly stated that

"when the contested basis of Federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it 'appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'"

quoting *Bell v. Hood, supra*, 327 U.S. 678, 682, 66 S.Ct. 773 at 776.

 It cannot be said that the Trustee's claim is frivolous or that it has been brought in the Bankruptcy Court solely to obtain federal jurisdiction since, as at least some defendants acknowledge, the action could have been brought in federal court based upon diversity jurisdiction. In addition, the bankruptcy court is authorized to hear non-core related matters pursuant to 28 U.S.C. § 157(c)(1). This action is clearly within the scope of that provision as recognized by the fact that the defendants have argued only that this claim is not a core proceeding. Thus, the jurisdictional question presented is essentially whether the cause of action asserted by the Trustee is a core proceeding for which 28 U.S.C. § 157(b) provides the court's jurisdictional authority to render a judgment or final order. The Trustee has predicated this court's jurisdiction upon its claimed right to a "turnover" pursuant to 11 U.S.C. § 542, which cause of action it asserts to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (b)(2)(O). In moving for dismissal on the grounds of lack of subject matter jurisdiction, defendants assert that the Trustee's action is not a core proceeding but is one for breach of contract under state law. The Trustee would have this court conclude from the language of 28 U.S.C. § 157(b)(2)(E) that the Bankruptcy Court would necessarily have jurisdiction to render a judgment or final order in any turnover action satisfying the requirements of Code § 542. The courts are not in agreement that this is so. E.g., see and compare *Matter of Century Brass Products, Inc.*, 58 B.R. 838 (Bankr.D.Conn.1986) and *Lesser v. A–Z Assoc., (In re Lion Capital Group)*, 46 B.R. 850 (Bankr.S.D.N.Y. 1985). Regardless of which view this court might follow, it is apparent that at least some § 542 turnover actions will satisfy the definitional requirements of a core proceeding under 28 U.S.C. § 157(b). Whatever view might be taken as to when a claim for a turnover under Code § 542 would constitute a core proceeding, the question in this case ultimately involves consideration of the merits of the cause of action asserted.

 The disagreement in the cases as to when a turnover claim constitutes a core proceeding merely adds credence to the Trustee's jurisdictional claim. Moreover, this court finds that it is inappropriate to grant defendants' Rule 12(b)(1) motion to

dismiss for lack of subject matter jurisdiction prior to consideration of the merits of the claim since the ultimate question depends upon the facts underlying the Trustee's turnover claim. In that respect this court finds it useful to follow the more general federal practice that where jurisdictional facts are intertwined with the merits of the claim, the preferred federal practice is to *assume that jurisdiction exists* and determine the merits pursuant to a Rule 12(b)(6) or Rule 56 motion or at trial. *Fogel v. Chestnut*, 668 F.2d 100 (2d Cir. 1981) (finding that because the question of whether there was an implied right cause of action for damages under the Investment Company Act of 1940 goes to the merits, dismissal would have to be for failure to state a claim for which relief can be granted rather than for lack of subject matter jurisdiction.) See also *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1976) (where plaintiff claimed that defendant violated its rights under the First and Fourteenth Amendments, the court found a sufficient allegation of jurisdiction under 28 U.S.C. § 1331 by assuming without deciding that a federal cause of action was available to plaintiffs, notwithstanding defendant's argument that as a "nonperson" 42 U.S.C. § 1983 excluded it from liability.).

"As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question of whether the complaint states a cause of action. The Judicial Code, in investing jurisdiction in the District Courts, does not create ate causes of action, but only confers jurisdiction to adjudicate those arising from other sources which satisfy its limiting provisions. The District Court must take jurisdiction [in order to determine whether the claim asserted under the federal statute is well founded], whether its ultimate resolution is to be in the affirmative or the negative. If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has. ... Even a patently frivolous complaint might be sufficient to confer power to make a final decision that it is of that nature, binding as res judicata on the parties." *Montana Dakota v. Public Service Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951).

As stated by the Supreme Court in *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979) at fn. 5: "the question whether a cause of action exists is not a question of jurisdiction and therefore may be assumed without being decided." Accordingly, this court finds it inappropriate at this time to grant the defendants' motion to dismiss for lack of subject matter jurisdiction.

 As to defendants' remaining Rule 12(b) motions to dismiss and their alternative motion for change of venue, the court finds that the interests of judicial economy dictate that the propriety of transfer of venue be considered first. Where, as here, transfer of venue is sought by defendants alternatively to concurrent Rule 12(b)(1)[2]

**2.** Though the subject matter jurisdiction question has been disposed of to the extent indicated in the preceeding discussion, it should be pointed out that while the court, for a number of reasons, need not decide if the cause of action asserted is a core or non-core proceeding, *see In re 666 Associates*, 57 B.R. 8, 13 (Bankr.S.D.N.Y. 1985), were consideration of the merits to lead this court to the conclusion that the Trustee's claim did not constitute a core proceeding, this court would still retain sufficient jurisdiction over the action as a non-core related proceeding to allow transfer of venue. Moreover, this court believes that prudential considerations here dictate immediate consideration of transfer of venue in order to avoid the unpleasant possibility that this court might find that jurisdiction exists when the transferee court would take a contrary view. It is well established that a change of venue is neither a judgment nor a final order but a non-appealable interlocutory order. See *AAACON Auto Transport, Inc. v. Ninfo*, 490 F.2d 83 (2d Cir.1974). Thus, this court, may transfer venue of a non-core but related proceeding pursuant to 28 U.S.C. § 1412. See *In re Lion Capital Group*, 46 B.R. 850 (Bankr.1984) ("the bankruptcy courts are to issue interlocutory orders in related cases referred to them.") Rule 7087 of the Bankruptcy Rules states:

"On motion and after a hearing, the court may transfer an adversary proceeding or any

and 12(b)(6) motions for dismissal, if the requirements for transfer are met, it is not necessary to reach the issues raised as to dismissal of the action under either Rule 12(b)(1) or 12(b)(6).[3] *Teleprompter Corp. v. Polinsky,* 447 F.Supp. 53 (S.D.N.Y.1977) (if transfer is warranted the issue concurrently raised as to personal jurisdiction need not be reached); citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); (transfer might be ordered even in the absence of personal jurisdiction over the defendant); *Wilmot H. Simonson Co. v. Green Textile Associates,* 554 F.Supp. 1229 (N.D.Ill.E.D.1983) (a ruling on a 12(b)(6) motion to dismiss for failure to state claim is not required before a proper transfer can be made.) Accordingly, this court next considers defendant's motion to change venue pursuant to 28 U.S.C. § 1412.

■ Factors which come under consideration in determining the propriety of transfering the venue of an adversary proceeding are: (1) the relative ease of access to proof, (2) availability of compulsory process for obtaining unwilling witnesses, (3) cost of obtaining willing ones, and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1946); *In re Anchortank, Inc.,* 3 B.R. 72 (Bankr.S.D.N.Y.1980); *Matter of Hartfield Zodys, Inc.,* 5 C.B.C. 699 (Bankr.S.D.N.Y.1975); *Matter of Galanis,* 6 B.R. 900, 903 (Bankr.D.Mass.1980); and *In re Cole Associates, Inc.,* 7 B.R. 154, 156 (Bankr.D.Utah C.D.1980). These factors

support transfer of the proceeding to the Colorado District Court in the present case.

■ All of the defendants are located in Colorado with the exception of one, an entity doing business in Texas. It is apparent from representations made at the pretrial conference held on August 12, 1985 that a significantly greater number of potential witnesses are located in Colorado than in New York. It is also evident that "advertising" materials allegedly produced by the Debtor in New York as part of services it provided were created specifically for use in Colorado in connection with the marketing of real property there.

In response to the court's inquiry as to what witnesses the parties would call, the Trustee's counsel named only Edward Hoffman, President of the Debtor, and his son Norman Hoffman as likely witnesses. Defendants' counsel indicated that its defense would rely substantially upon the testimony of such categories of witnesses as sales people, real estate agents and others knowledgeable about the Aspen, Colorado real estate market. Eight potential defense witnesses residing in Colorado were specifically named in an affidavit submitted by defendant Jay Kuhne. It is the court's belief that some of the defense witnesses are of the type for which compulsory process may be particularly necessary.

Since the services provided by the Debtor were specifically tied to the marketing of real property in Colorado, it is clear that to whatever extent defendants may require

part thereof to another district pursuant to 28 U.S.C.C. § 1475 and § 1477 ..."
(28 U.S.C. §§ 1475 and 1477 were superceded by 28 U.S.C. § 1412).

**3.** As to the bank defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3), the court finds that venue is properly placed here in the district court where the bankruptcy case is pending pursuant to 28 U.S.C. § 1409(a). The bank defendants' reliance on subsection (c) of 28 U.S.C. § 1409 is misplaced. Subsection (c) merely provides an alternative to the general rule of § 1409(a) in cases where the requirements of subsection (c) are satisfied. In any event, § 1409(c) is permissive in providing that a trustee *"may* commence a proceeding [in a

suitable forum] under applicable non-bankruptcy venue provisions." (Emphasis added). See *In re Colby Glass Products Co.,* 7 C.B.C. 247, 22 B.R. 961 (Bankr.D.R.I.1982) and *In re G. Weeks Securities, Inc.,* 2 C.B.C. 1240, 6 B.R. 277 (Bankr. W.D. Tenn.1980) (these cases concern the venue provisions under 28 U.S.C. § 1473(a) and (c), virtually identical predecessors to the current venue provisions under 28 U.S.C. Section 1409(a) and (c) of the Bankruptcy Reform Act of 1978.) See 1 Collier on Bankruptcy ¶ 3.02, 3–106 (15th ed.). In any event, even where venue is improperly located, 28 U.S.C. § 1406(a) provides for transfer as an alternative to dismissal where, as in the case here, the transfer is "in the interest of justice."

additional evidence or witnesses they are likely to be found in Colorado. It has also been stated that Norman Hoffman, who was allegedly in charge of the Debtor's participation in the promotion of the Hunter Creek project, spent 50% of his time during one year in Aspen, Colorado, working on the advertising aspects of the Hunter Creek project. Though Edward Hoffman states in his affidavit, on information and belief, that Norman Hoffman performed services for the Hunter Creek project "in part pursuant to the personal services contract and not the Advertising Agency Agreement," it is clear that to whatever degree Norman Hoffman's activities are relevant to this action, any question as to which agreement he was operating under while he was in Colorado may involve witnesses and evidence located in that state.

It is apparent that there are several agreements between these parties in connection with the marketing of the Hunter Creek Condominiums of which the Advertising Agreement, which has not been submitted to the court is but one. An agreement submitted to the court by the defendants pertains to real estate brokerage services provided by the Debtor in connection with the sale of Hunter Creek condominium units. While defendants have not answered the Trustee's complaint or counterclaim, defendant Jay Kuhne's affidavit enumerates certain harm allegedly resulting from acts or omissions of the Debtor. Proof in that regard would undoubtedly depend upon evidence and witnesses in the State of Colorado. To the extent that Colorado law would control over any contract concerning real property located in that state, venue would be more appropriately placed in the District Court of Colorado.

The deceptive simplicity of the Trustee's complaint, though satisfying the liberal federal pleading requirements, belies the size and potential complexity of this litigation. The Trustee's characterization of this dispute as a straightforward "turnover" claim supported by the barest factual and statutory references cannot alter the reality that this case involves a substantial claim of $137,302.57, with numerous defendants and a multiplicity of underlying documents and agreements. Were it otherwise, were a more nominal amount at stake and were fewer defendants, witnesses and documentary evidence necessary to the litigation, the presumption might more strongly favor keeping the litigation in the home court of the bankruptcy case itself. This is not such a case. From the size of the claim and from the presentations made thus far by the parties it is clear that this matter is a hotly contested one. Finding no imminent nonjudicial resolution of this matter the court does not believe that in this case transferring venue would ultimately be merely a judicial exercise of no practical significance. Moreover, if there is no settlement, the number of potential witnesses and exhibits indicates that a trial of several days could be necessary.

The court does not agree with the argument of Trustee's counsel that the estate would be unduly burdened by having to litigate this matter in Colorado since there has been no representation that the Trustee is unable to locate competent counsel in Colorado at rates comparable to or even less than those of its New York counsel. Therefore, upon balancing the relevant factors to its consideration of change of venue in this case, the court finds that transfer of this proceeding to the United States District Court for the District of Colorado is warranted.

All of the defendants with the exception of Creative Equity Corporation have moved for sanctions against Plaintiff's counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure and Rule 9011 of the Bankruptcy Rules, and for attorneys' fees and the expenses of defending this action. In light of this court's decision here transferring venue to the District Court of Colorado without ruling on defendants' Rule 12(b)(6) motion, this court finds that its consideration of these motions at this time would be premature. Therefore, this court declines to rule on said motions prior to transfer of this proceeding.

The court having found transfer of venue appropriate under the circumstances of this case pursuant to the requirements of 28 U.S.C. § 1412 hereby orders this proceeding transferred to the United States District Court for the District of Colorado and defers decision on the remaining motions to the transferee court.

The Clerk of the Bankruptcy Court is directed to take the appropriate steps necessary to accomplish transfer of this adversary proceeding to the Colorado District Court.

It is so ordered.