**In re SCHACK GLASS INDUSTRIES CO., INC. d/b/a Schack Industries, Inc., Debtor.**

**Bankruptcy No. 82 B 20066.
Adv. No. 82 ADV. 6054.**

United States Bankruptcy Court,
S. D. New York.

June 18, 1982.

Walter G. Birkel, Jr., Cummings & Birkel, Washington, D. C., Barr & Faerber, Spring Valley, N. Y., for debtor.

## DECISION ON MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The defendant, Al-Huseini-ADA (Saudi Arabia), Ltd. (hereinafter called "ADA") has moved to dismiss the debtor's complaint which seeks damages resulting from the defendant's alleged improper usage of certain shop drawings, related designs and engineering data for the manufacture of Mosque doors and windows to be supplied by the debtor for a project located at Areas One and Three at the King Khalid Military City, Al-Batin, Saudi Arabia. ADA asserts that it is a foreign joint venture, not a resident of the United States, and that service of the summons and complaint was defective with the result that this court does not have *in personam* jurisdiction over ADA.

Service of copies of the summons and complaint was effected by certified mail addressed to ADA in Washington, D.C., at 2020 K Street, N.W., the office address listed on the letterhead of its stationery. Copies were also mailed to ADA's attorneys in Washington, D.C. The envelope addressed to ADA containing the copies of the summons and complaint was not directed to the attention of any officer, managing or general agent, or any other appointed agent as specified in Bankruptcy Rule 704(c)(3). However, ADA admittedly did receive the copies of the summons and complaint in sufficient time for the purpose of filing its answer, which contains a jurisdictional objection, and for the filing of this motion to dismiss the complaint on jurisdictional grounds. The defendant's previous limited appearance for the purpose of objecting to the debtor's application for a preliminary injunction was not a waiver of its right to assert lack of *in personam* jurisdiction in this adversary action and will not have any bearing on the jurisdictional issue.

## FACTS

The defendant, ADA, is a joint venture entity licensed under the laws of the Kingdom of Saudi Arabia, with principal offices in Daharan, Saudi Arabia. ADA's foreign nationals in this country under temporary business visa status utilize an office located at 2020 K Street, N.W., Suite 310, Washington, D.C. This address and a telephone number appear on the various letters that ADA directed to the debtor. These premises are made available to ADA by its attorneys, the law firm of Cummings & Birkel, which holds the principal lease for the office. There are two secretarial assistants present at this office, neither of whom is employed by ADA, but have been assigned to it by one of ADA's subcontractors. One of these secretaries signed for the certified mail directed to ADA.

ADA admits that at any one time two to four employees of ADA may be present in Washington, D.C. and they use the 2020 K Street facilities. These foreign national employees of ADA are present in the United States under temporary business visas granted by the United States Consulate in Saudi Arabia. These individuals coordinate technical data and exercise quality certification necessary to facilitate the offshore procurement of materials to be delivered to the King Khalid Military City Project as required by ADA's contract for this project

with the United States Army Corps of Engineers. Thus, ADA's employees are present at the 2020 K Street address for the purpose of administering aspects of contracts with ADA, including the debtor's contract, which is the subject of this case.

The debtor's contract with ADA, dated February 1, 1980, was originally negotiated and executed by the parties in the General Motors Building on Fifth Avenue, New York City. There were four subsequent amendments of the contract in question. The first amendment, dated April 23, 1980 was also executed in New York City. The second amendment dated March 24, 1981, was negotiated and executed at 2020 K Street, N.W., Washington, D.C. The third amendment, dated September 14, 1981, was executed in the offices of the National Bank of Pakistan, 100 Wall Street, New York City. The fourth amendment, dated December 14, 1981, was also executed at the 2020 K Street address in Washington, D.C. Thus, the original contract and two of its four amendments were executed by the parties in New York City.

Following the execution of the original contract a representative of ADA periodically visited the debtor's premises in New York approximately once a month to inspect various materials to be furnished by the debtor under the contract, to coordinate supplies and to update correspondence and activities. That representative of ADA was Safdar Abbas, who described himself in the affidavit sworn to April 26, 1982, submitted in support of ADA's motion, as "Manager of Purchasing for Al-Huseini-ADA (Saudi Arabia), Ltd." It was Safdar Abbas who acknowledged receipt of the copies of the summons and complaint in this case when he sent a Telex, dated April 23, 1982, to Mr. Ahmed Nawaz Khan, Deputy Managing Director of ADA in Saudi Arabia, requesting information for the preparation of a defense. In this Telex Mr. Abbas said:

> "We have previously transmitted on or about March 23, 1982 to you the contents of the complaint of Schack Industries, Inc. and accompanying affidavit of Bernard Golor, filed in the U. S. Bankruptcy Court on March 19, 1982, as well as the Order to Show Cause of Honorable Howard Schwartzberg, Bankruptcy Judge. As per our prior request, we ask you to respond in detail to the following inquiries:
>
> .    .    .    .    .
>
> 4—This information will furnish the basis for an affidavit to be submitted to the U. S. Bankruptcy Court."

### DISCUSSION

ADA's jurisdictional defense is structured around two propositions: (1) Its activities within the District of Columbia are not sufficient to support service of process by mail directed to that location; and (2) The service by mail in this case was not "directed to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" as required under Bankruptcy Rule 704(c)(3). The debtor's mailing of copies of the summons and complaint to ADA's counsel in Washington, D.C. obviously does not satisfy Rule 704(c)(3) since there is no proof that counsel acted as general agents for ADA or had previously been authorized to receive service of process for any purpose for ADA. ADA did not enter a general appearance in this case and the limited appearance by its counsel expressly for the purpose of objecting to the preliminary injunction and advancing ADA's motion to dismiss will not suffice to submit ADA to *in personam* jurisdiction.

### ADA's MINIMUM CONTACTS WITH WASHINGTON, D.C.

ADA's reliance on the nature and extent of its contacts and activities in Washington, D.C. is misplaced. In a geographical context, the focus should more appropriately be directed towards New York, which is the forum of this case and where the contract in question and two of the four amendments were executed. Moreover, ADA's representatives visited the debtor's premises in New York at least once a month in order to follow up and supervise the debtor's performance under the contract, as amended. If this were a non-bankruptcy case these factors would more than amply

justify the application of New York's long-arm statute, New York Civil Practice Law and Rules § 302(a)(1), which supports *in personam* jurisdiction where a nonresident "transacts any business within the state."

Since this is a bankruptcy case, ADA's argument, based upon a minimum contacts theory, whether in relation to Washington, D.C. or New York, is totally misdirected. The "minimum contacts" rule, as enunciated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and thereafter more strictly construed as the "reasonable nexus" rule in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), applies in the context of *in personam* jurisdiction in non-bankruptcy cases commenced in district courts, usually involving diversity of citizenship of the parties. This doctrine has no relevance to bankruptcy cases where *in personam* and *in rem* jurisdiction are governed by statute, namely 28 U.S.C. § 1471. This provision gives the bankruptcy courts comprehensive jurisdiction of all civil proceedings under, or in, or related to bankruptcy and reorganization cases. Indeed, the Legislative History with respect to 28 U.S.C. § 1471 states:

> "The bankruptcy court is given *in personam* jurisdiction as well as *in rem* jurisdiction to handle everything that arises in a bankruptcy case." *House Report* No. 595, 95th Cong. 1st Sess. p. 445 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 6400.

■ Hence, the "minimum contacts" or "reasonable nexus" theories do not apply in bankruptcy cases since the jurisdictional foundation in such cases is based on a statutory rule designed to reflect that the totality of *in personam* and *in rem* jurisdiction should be exercised by the bankruptcy courts in order to avoid fragmentation of litigation and in furtherance of the spirit of economy in administration of bankruptcy estates. *In re Nixon Machinery Co.*, 15 B.R. 131 (B.C.E.D.Tenn.1981); *In re Whippany Paper Board Co. Inc.*, 15 B.R. 312 (B.C.N.J. 1981); *In re American Aluminum Window Corp.*, 15 B.R. 803 (B.C.Mass.1981); *In re G. Weeks Securities Inc.*, 6 B.R. 277 (B.C.W.D. Tenn.1980), companion cases 5 B.R. 220

(B.C.W.D.Tenn.1980) and 3 B.R. 215 (B.C.W. D.Tenn.1980). In as much as the case against ADA arises in or is related to the debtor's reorganization case, it may be commenced in this court pursuant to the venue directions in 28 U.S.C. § 1473, since this is the court where the debtor's reorganization case is pending. Therefore, the issue is not whether ADA may be compelled to defend the debtor's case against it because of its alleged lack of contacts with Washington, D.C., but rather, was service of process by mail properly effected in this case under Bankruptcy Rule 704(c)(3)?

## SERVICE BY MAIL–RULE 704(c)(3)

ADA alleges that the service of process by mail was defective because it was not directed to the attention of an officer, managing agent or general agent, or to any other agent authorized to receive service of process. This objection tracks the language in Bankruptcy Rule 704(c)(3), which states:

> "Rule 704. Process; Service of Summons, Complaint, and Notice of Trial or Pre-Trial Conference.
>
> .   .   .   .   .
>
> (c) Service by Mail. Service of summons, complaint and notice of trial or pre-trial conference may also be made within the United States by first-class mail postage prepaid as follows:
>
> .   .   .   .   .
>
> (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons, complaint, and notice directed to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

Bankruptcy Rule 704 in general is an adaptation of Rule 4 of the Federal Rules of Civil Procedure. However, unlike the current mode for service of process under FRCP 4, Bankruptcy Rule 704(c)(3) authorizes service of process upon domestic or foreign corporations or unincorporated asso-

ciations by mail in bankruptcy cases. The territorial limits of such service are expressed in Bankruptcy Rule 704(f) as "anywhere within the United States." Hence, nationwide service by mail is the rule.

The debtor does not deny that copies of the summons and complaint that were sent by certified mail addressed to ADA at the latter's Washington, D.C. address were not directed to the attention of any officer, managing agent or other authorized agent, as specified in Rule 704(c)(3). However, the secretary who signed for the certified mail gave the summons and complaint to ADA's Manager of Purchasing who was present in the Washington, D.C. office and who then promptly transmitted the papers and accompanying affidavit to ADA's managing director in Saudi Arabia with a request for information so as to assert a defense to the action. Therefore, ADA received timely notice of the commencement of the case together with copies of the summons and complaint, notwithstanding that Rule 704(c)(3) was not literally complied with because the mail was not directed to any officer or agent. Thus, this is not a case where a defendant failed to receive copies of the summons and complaint in time to assert a defense to the action or where the summons and complaint were not turned over to a managing agent or authorized agent by an employee who actually received the papers.

ADA's reliance upon the debtor's technical failure to direct the service by mail to the attention of an officer or authorized agent stems from its apparent belief that a dismissal of the complaint for such failure would preclude the debtor from correcting this omission and again mailing the papers to ADA's Washington, D.C. address. This belief is based on the assumption that its Washington, D.C. address and activities at such location are insufficient contacts to support *in personam* jurisdiction and therefore, since service by mail is limited to the territorial confines of the United States, as expressed in Rule 704(f), ADA could not again be served with process in this country. This position is the result of ADA's misapplication of two rules. ADA's amenability for *in personam* jurisdiction is premised on 28 U.S.C. § 1471, as previously noted, and not Rule 704(c)(3). The latter rule merely specifies how service of process may be effected with respect to a party who is subject to *in personam* jurisdiction under 28 U.S.C. § 1471. The "minimum contacts" doctrine is irrelevant under 28 U.S.C. § 1471 and, more importantly, has no application at all under Rule 704(c)(3). Indeed, Rule 704(c)(3) does not even state that the service of process must be mailed to a company's principal office or that it be by certified mail; first class mail is sufficient. The requirement that the mail be directed to the attention of "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" is intended to decrease the risk of careless or improper handling. However, rigid formalism is not the rule and harmless errors, which do not affect a party's right to be informed in timely fashion in order to assert defenses, may be disregarded pursuant to Rule 704(h), which provides:

> "Rule 704. Process; Service of Summons, Complaint, and Notice of Trial or Pre-Trial Conference.
>
> .    .    .    .    .
>
> (h) Effect of Errors; Amendment. Service of process under this rule shall be effective notwithstanding an error in the papers served or the manner or proof of service if no material prejudice resulted therefrom to the substantial rights of the party against whom the process issued. Amendment of process or proof of service thereof may be allowed as provided in Rule 4(h) of the Federal Rules of Civil Procedure."

Even under Rule 4(d) of the Federal Rules of Civil Procedure, where personal service of process, rather than service by mail, is the mode, the courts have held that service upon a responsible employee, so as to result in notice to the defendant, will be deemed sufficient service. *Insurance Co. of N. America v. S/S "Hellenic Challenger"*, 88 F.R.D. 545 (S.D.N.Y.1980); *Top Form Mills v. Sociedad Nationale Inc.*, 428 F.Supp. 1237 (S.D.N.Y.1977); *Montclair Electronics, Inc. v. Electra/Midland Corp.*, 326 F.Supp. 839 (S.D.N.Y.1971); *K. L. M. v.*

*Curtiss-Wright Corp.*, 17 F.R.D. 49 (S.D.N.Y.1955).

In *Insurance Co. of N. America*, supra at page 547, the court said:

"Rule 4(d)(3) has been liberally construed by the courts and, as interpreted, does not require rigid formalism. To be valid, service of process is not limited solely to officially designated officers, managing agents or agents appointed by law for the receipt of process.

.    .    .    .    .

'[T]he rule does not require that service be made solely on a restricted class of formally titled officials, but rather permits it to be made upon a representative so integrated with the organization that he will know what to do with the papers'" (quoting *Top Form Mills, Inc. v. Sociedad Nationale Inc.*, supra.)

■ In the instant case, if the service of process were to be set aside, the debtor would only have to mail once again copies of the summons and complaint to ADA's office address in Washington, D.C., directed to the attention of an officer or manager of that office. As indicated in the Advisory Committee Note with respect to subsection (c) "it is not necessary for the officer or agent of the defendant to be named in the address so long as the mail is addressed to the defendant's proper address and directed to the attention of the officer or agent by reference to his position or title." Moreover, there is no dispute that the 2020 K Street office in Washington, D.C. is the only proper address for the defendant in this country, as reflected on its stationery. Therefore, since ADA may be served with process by mail directed to its Washington, D.C. office, so that a setting aside of the disputed service would not insulate ADA from *in personam* jurisdiction, it follows that the granting of its motion would only elevate form over substance.

No conceivable purpose would be served by viewing debtor's service of process as insufficient, especially since ADA has received timely notice together with copies of the summons and complaint which were turned over to responsible officers of the defendant in ample time to afford the defendant an opportunity to assert its defense and file its answer (which it did). Therefore, the debtor's failure to include a notice on the envelope in which the copies of the summons and complaint were mailed "directed to the attention of an officer, a managing or general agent, or to any other agent authorized . . . to receive such service", as stated in Rule 704(c)(3), should be regarded as a harmless error within the meaning of Rule 704(h).

Accordingly, the debtor's service of process under Rule 704(c)(3) is deemed effective, notwithstanding the technical error, since "no material prejudice resulted therefrom to the substantial rights of the party against whom the process issued" within the meaning of Rule 704(h). ADA's motion to set aside the service and dismiss the complaint for lack of *in personam* jurisdiction is denied.

IT IS SO ORDERED.